CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
May 08, 2023
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

**UNITED STATES OF AMERICA** )
) **Criminal No. 5:09-cr-00032-MFU-1**
**v.** )
) **By: Michael F. Urbanski**
**RAFAEL JIMENEZ,** ) **Chief United States District Judge**
**Defendant-Petitioner** )

**MEMORANDUM OPINION**

This matter comes before the court on defendant Rafael Jimenez's motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 182. The government responded and Jimenez has replied. ECF Nos. 188, 190. For the reasons stated herein, the court will **GRANT in part** Jimenez's motion for compassionate release and reduce his sentence to 210 months, to be followed by a 5-year term of supervised release.

**I.**

On August 20, 2009, a Grand Jury returned an indictment charging Jimenez and a co-defendant with crimes related to guns and drugs. Indictment, ECF No. 13. Jimenez was charged with conspiring to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (Count 1) and possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) (Count 4). Id.

On August 24, 2009, the government filed a notice of enhanced punishment as to Jimenez, pursuant to 21 U.S.C. § 851.[1] The notice was based on Jimenez's previous convictions

[1] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before

in state court on one count of possession of marijuana and one count of possession of cocaine. ECF No. 18. Jimenez served 364 days on the marijuana conviction and 1 day on the cocaine conviction. Presentence Investigation Report (PSR), ECF No. 127 ¶¶ 31, 35.[2]

On November 10, 2009, Jimenez entered into a plea agreement in which he pled guilty to Counts 1 and 4 of the indictment. Plea Agreement, ECF No. 54 at 1. Jimenez stipulated that for purposes of the § 851 enhancement, he was convicted of two prior qualifying felony drug offenses. However, the government agreed to dismiss the sentencing enhancement based on Jimenez's possession of marijuana conviction in state court and pursue enhancement based only on Jimenez's state court conviction for possession of cocaine. Id. The parties agreed to a sentence of 240 months, the mandatory minimum Jimenez faced due to the § 851 enhancement. Id. at 3.

On Count 1, Jimenez faced a 20-year statutory minimum term of imprisonment and a maximum term of life. 21 U.S.C. § 841(b)(1)(A) (2009). Without the § 851 enhancement, the minimum sentence was 10 years and the maximum was life. Id. On Count 4, he faced a statutory term of 10 years to life. 18 U.S.C. § 922(g)(1). However, under the Armed Career Criminal Act (ACCA), if found to have three previous convictions for a violent felony or serious drug offense, or both, Jimenez faced a 15-year minimum on the firearm charge. PSR, ECF No. 127 ¶ 58; 18 U.S.C. § 924(e)(1).

---

entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

[2] Two PSRs were prepared in this case. The first one was for the original sentencing and is filed at ECF No. 127. The second was amended for the resentencing and is filed at ECF No. 147.

According to the PSR, based on drug weight, Jimenez had a base offense level of 32 because he was found responsible for at least 500 grams but less than 1.5 kilograms of methamphetamine. PSR, ECF No. 127 ¶ 19 (citing USSG §2D1.1(c)(4)). He received a three-level reduction for acceptance of responsibility, for a total offense level of 29. Id. ¶¶ 17–23. An offense level of 29 coupled with a criminal history category of VI resulted in a guidelines range of 151 to 188 months. USSG Ch. 5 Pt. A.

However, Jimenez was classified as a career offender, making his base offense level 37. PSR, ECF No. 127 ¶ 24 (citing USSG § 4B1.1). After a three-level reduction for acceptance of responsibility, Jimenez's offense level was 34, which, combined with his criminal history category of VI, gave him a guidelines range of 262 to 327 months. Id. ¶¶ 25–26; USSG Ch. 5 Pt. A. On February 8, 2010, Jimenez was sentenced to a term of 240 months each on Counts 1 and 4 to run concurrently, followed by a 10-year term of supervised release. J., ECF No. 76.

On June 24, 2016, Jimenez filed a motion to vacate his sentence in light of Johnson v. United States, 576 U.S. 591 (2015), contesting his career offender and ACCA enhancements. Mot., ECF No. 120. The court granted the motion in part and ordered a resentencing hearing, because Jimenez no longer qualified for the ACCA enhancement. Order, ECF No. 138. The court found that that under Johnson, which invalidated the residual clause of 18 U.S.C. § 924(e)(1)(ii), one of Johnson's prior felony convictions, a 2001 Florida conviction for battery, no longer qualified as a "violent felony" under the ACCA. Without that third "violent felony"

conviction, Jimenez was not subject to the ACCA mandatory minimum sentence of 15 years on Count 4.[3]

Jimenez also asked the court to resentence him on Count 1, arguing that the guidelines range for the drug offense was based on the ACCA designation, which no longer applied. The court denied the motion because Jimenez was sentenced to the statutory mandatory minimum sentence of 240 months and the holding in Johnson had no impact on that sentence. Also, the court noted that Jimenez's sentence was the result of a binding Rule 11(c)(1)(C) agreement. Order, ECF No. 137 at 5–6.[4]

At resentencing, Jimenez again was found to be a career offender, with an offense level of 34 and a criminal history category of VI. PSR, ECF No. 147 ¶¶ 19–29, 39. His guidelines range was 262 to 327 months. Id. ¶ 63. Again, without the career offender designation, Jimenez would have had an offense level of 29 and a criminal history category of VI. Id. ¶¶ 19–26, 39. Jiménez was resentenced to 120 months and 3 years supervised release on Count 4 and the sentence on Count 1 remained the same at 240 months and 10 years supervised release. The sentences were ordered to run concurrently. Amended J., ECF No. 156.

Jimenez has been in continuous custody since January 14, 2009 and has a projected release date of June 26, 2026.[5] To date he has served more than 70 percent of his sentence.

---

[3] The PSR identified three violent felonies that it found qualified Jimenez for the 15-year mandatory minimum sentence under the ACCA: a 1997 conviction for attempted robbery, a 2001 conviction for battery, and a 2003 conviction for aggravated battery. PSR, ECF No. 127 ¶¶ 28, 29, 32. The Supreme Court held in Johnson v. United States, 559 U.S. 133 (2010), that Florida battery is not a violent felony for purposes of the ACCA.

[4] At the resentencing hearing, the court acknowledged that after Hughes v. United States, 138 S.Ct. 1765, 1777–78 (2018), the fact that Jimenez was sentenced as the result of a binding Rule 11(c)(1)(C) plea agreement did not mean that the guidelines sentence on Count 1 could not be revisited, if the sentence range was a basis for the court's exercise of discretion in imposing the sentence. Sentencing Tr., ECF No. 158 at 6–7.

[5] https://www.bop.gov/inmateloc/ (search "Rafael Jimenez") (last viewed May 8, 2023).

Jimenez's motion for compassionate release does not affect his sentence on Count 4 as he has discharged the sentence. Therefore, the court only looks at his sentence on Count 1 in assessing his motion for compassionate release.

II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Jimenez's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129-30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of

Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131.

Jimenez asserts that he requested compassionate release from the Warden of Big Sandy USP on October 1, 2021, and that more than 30 days elapsed before he filed his motion. Mot., ECF No. 182; Ex. 2, ECF No. 182-2. The government does not contest that Jimenez exhausted his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court finds that Jimenez has satisfied the statute's exhaustion requirements.

The court must next consider whether there are any "extraordinary and compelling reasons" that would warrant "reduc[ing] the term of imprisonment" imposed in Jimenez's case. 18 U.S.C. § 3582(c)(1)(A). The USSG § 1B1.13 policy statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)–(C). See U.S. Sentencing Comm., Guidelines Manual § 1B1.13 at cmt. n.1(A)–(D).

In United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020), the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." Id. (citing United States v. Brooker, 976

F.3d 228, 239 (2d Cir. 2020)). In so holding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement, finding that the policy statement applied only to motions for compassionate release filed by the BOP. See discussion, McCoy, 981 F.3d at 280–84. However, the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

The McCoy court examined the changes to 18 U.S.C. § 924(c) brought about by the First Step Act. Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." Id. at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(i). "Under § 403 of the First Step Act, that is, the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" McCoy, 981 F.3d at 275 (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). The practical result of the change is that where defendants once faced a mandatory minimum sentence of 25 or 30 years when convicted of two firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense, for a total of 10 years. United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. Mar. 16, 2020). The McCoy court, granting reduction of the defendants' sentences, found that a "gross disparity" between a defendant's

sentence at the time of conviction and the sentence that would be imposed under current law can be considered an "extraordinary and compelling reason" for granting compassionate release. McCoy, 981 F.3d at 285–86.

In this case, Jimenez argues that, based on two changes in the law, if sentenced today he would receive a substantially shorter sentence. Regarding both changes, he asserts that the difference in the sentence he received originally and the likely sentence he would receive today is a gross disparity that serves as an extraordinary and compelling reason for granting compassionate release.

**A.**

First, Jimenez argues that if he were sentenced today, due to changes in law made by the First Step Act, the prior convictions used to enhance his sentence on Count 1 to a twenty-year mandatory minimum would not apply. Instead, without such enhancements, Jimenez would be subject only to a ten-year mandatory minimum sentence.

Prior to the First Step Act, Section 841(b)(1)(A) provided that if a person violated the statute "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years . . . ." 21 U.S.C. § 841(b)(1)(A) (2010). The First Step Act changed the triggering predicate crime from a "felony drug offense" to a "serious drug felony" or "serious violent felony." 21 U.S.C. § 841(b)(1)(A) (2018). The term "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct related to narcotic drugs . . . ." 21 U.S.C. § 802(44). The term "serious drug felony" is defined as an offense described in 18 U.S.C. §

924(e)(2) for which the offender served a term of imprisonment of more than 12 months. 21 U.S.C. § 802(57). Thus, today, in order for a sentence to be increased under § 841(b)(1)(A), a person must have a prior conviction for a "serious drug felony" rather than a "felony drug offense," meaning he must have served more than 12 months on the offense.

As noted above, in the plea agreement, for purposes of the § 851 enhancement, the government agreed to look only to Jimenez's prior state court conviction for possession of cocaine for which he served only 1 day. Plea Agreement, ECF No. 54 at 1; PSR, ECF No. 127 ¶ 35. Clearly, that offense would not be considered a predicate offense after the First Step Act because it does not fit the definition of "serious drug felony." Nor would Jimenez's marijuana conviction be considered a "serious drug felony" for purposes of § 841(b)(1)(A) as he served only 364 days on the offense. PSR, ECF No. 127 ¶¶ 31. Because Jimenez served only 364 days, or one day shy of one year, service of that sentence would not qualify as a predicate offense for purposes of assessing a longer sentence under the statute even if the government had not agreed to dismiss it as an enhancing offense.

Therefore, if Jimenez were sentenced for the same conduct today, the § 851 enhancement would not apply. Without the enhancement, he would be subject to a mandatory minimum sentence of 10 years, and not the 20-year mandatory minimum sentence assessed on Count 1.

**B.**

Jimenez also argues that if sentenced today, he would no longer be considered a career offender under the sentencing guidelines and his guidelines range would be greatly reduced. Under USSG §4B1.1, a defendant is designated a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Jimenez was designated a career offender because at least one of his instant offenses was considered either a crime of violence or a controlled substance offense and he had two prior felony convictions that qualified him as a career offender.

However, under United States v. Norman, 935 F.3d 232 (4th Cir. 2013), convictions for conspiracy to distribute drugs are no longer considered controlled substance offenses under USSG § 4B1.2. The Fourth Circuit reasoned that because the "generic, contemporary meaning" of "conspiracy" requires an overt act, and "conspiracy" under § 846 does not require an overt act, § 846 criminalizes a broader range of conduct than that covered by generic conspiracy. Id. at 236–38. Accordingly, if sentenced today, Jimenez's instant conviction for conspiracy to distribute methamphetamine would not be considered a controlled substance offense and could not be used to designate Jimenez a career offender.

Nor could Jimenez's instant conviction for possession of a firearm by a convicted felon be used to designate him a career offender. See United States v. Johnson, 953 F.2d 110, 115 (4th Cir. 1991) (holding that in the absence of any aggravating circumstances, the offense of felon in possession of a firearm does not constitute a per se crime of violence under the provisions of USSG § 4B1.2). Without the career offender designation, Jimenez's total offense level would be 29. PSR, ECF No. 147 ¶ 26. His offense level of 29 combined with his criminal history category of VI renders a guidelines sentencing range of 151 to 188

months. USSG Ch. 5 Pt. A.[6]

Taken together, the changes in the law since Jimenez was sentenced indicate that if he were sentenced today, he would face a 10-year mandatory minimum sentence on Count 1 and a guidelines sentencing range of 151 to 188 months. Additionally, without the career offender designation and sentencing enhancement, Jimenez would be subject to a 5-year minimum term of supervised release, rather than a 10-year term. 18 U.S.C. § 841(b)(1)(A).

III.

Jimenez argues that the difference between his original sentence of 20 years and the sentence he would receive today is a gross disparity that provides an extraordinary and compelling reason to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The government counters that the disparity between the sentence Jimenez received and the sentence he would receive for the same conduct today is not an extraordinary and compelling reason to reduce his sentence. It claims that non-retroactive changes in sentencing law are not necessarily extraordinary and compelling and that a defendant must show that his circumstances are beyond what is "usual, customary, regular, or common." Resp., ECF No. 188 at 7–8 (citing Black's Law Dictionary, (11th ed. 2019)). However, based on McCoy, the court disagrees. McCoy clearly finds in the context of "stacked" sentences imposed under 18 U.S.C. § 924(c), "the enormous disparity between [the original] sentence and the sentence a defendant would receive today can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." McCoy, 981 F.3d at 285.

[6] Even without the career offender designation his criminal history category was VI. PSR, ECF No. 147 ¶ 39.

This court and others have applied the McCoy reasoning when considering motions for compassionate release founded on the claim that a defendant would no longer be subject to a longer sentence based on a § 851 enhancement. See, e.g., United States v. Gamboa, No. 2:08-cr-00151-2, 2022 WL 275528 (S.D.W.V. Jan. 28, 2022); United States v. Richards, No. 3:11-CR-31, 2021 WL 3861599 (W.D. Va. Aug. 30, 2021); Babb v. United States, No. ELH-04-0190, 2021 WL 2315459, at *12 (D. Md. June 4, 2021); and United States v. Williams, No. 5:12cr14, 2020 WL 5834673 (W.D. Va. Sept. 30, 2020). McCoy's reasoning similarly has been applied to motions for compassionate release seeking a reduced sentence based on the claim that after Norman, the defendant would not be considered a career offender. See, e.g., United States v. Gilmer, No. 5:00-cr-30053, 2022 WL 1423615 (W.D. Va. May 5, 2022); United States v. Cooper, No. 1:10CR00043-001, 2022 WL 1302708 (W.D. Va. May 2, 2022); United States v. Morris, No. 4:13cr25, 2022 WL 1285183 (E.D. Va. Apr. 29, 2022); United States v. Williams, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021); United States v. Fennell, 570 F.Supp.3d 357 (W.D. Va. 2021); United States v. Richards, No. 3:11-cr-31, 2021 WL 3861599 (W.D. Va. Aug. 30, 2021); and United States v. Trice, No. 7:13-CR-34-1001, 2021 WL 402462 (W.D. Va. Feb. 3, 2021). Considering these cases, the court finds that the disparity between Jimenez's current sentence and the sentence he would likely be given for the same conduct today meets the threshold discussed in McCoy and is an "extraordinary and compelling" reason to warrant a sentence reduction under § 3582(c)(1)(A).[7]

[7] Because the disparity between Jimenez's sentence and the sentence he would receive for the same conduct today is an "extraordinary and compelling" reason to warrant a sentence reduction," the court does not analyze Jimenez's claim for compassionate release related to COVID-19.

### III.

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The relevant factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; . . . .

18 U.S.C. § 3553(a). The government argues that the § 3553(a) factors weigh against granting a sentencing reduction. After considering the applicable factors, the court concludes that the factors weigh in favor of a sentence reduction.

Looking first at the nature and circumstances of the offense, Jimenez distributed methamphetamine with the help of a co-defendant and another person throughout Harrisonburg, Virginia. Jimenez was held responsible for between 500 grams and 1.5 kilograms of methamphetamine based on his distributing approximately one ounce of methamphetamine per week in connection with the drug conspiracy. See PSR, ECF No. 147, ¶ 13. Additionally, when his co-defendant and supplier was arrested, Jimenez went to the residence of an individual he believed was responsible for his co-defendant's arrest and fired his weapon at the individual to scare him. Id. ¶ 12. Not only did Jimenez contribute to the devastation wrought by methamphetamine in the community, he also created a threat of grave danger with his willingness to defend his drug business with violence. Therefore, the nature and circumstances of the offense weigh heavily against a sentence reduction.

Turning to the history and characteristics of the defendant, Jimenez reported a history of marijuana, cocaine, and methamphetamine use and he used cocaine regularly throughout his twenties. However, he reported no cocaine use since 2006 and no methamphetamine use since 2008. Id. ¶ 57. Jimenez has a long criminal history beginning in 1997 when he was 16 years old and continuing until his arrest in this case in 2009. He has prior convictions for attempted robbery, felony battery, and aggravated battery as well as three prior drug offenses. Id. ¶¶ 31–38.

Since being incarcerated, Jimenez has committed a number of disciplinary infractions. He has been found guilty of refusing to obey an order, possession of narcotics (THC), failing to stand count, drinking intoxicants, being insolent to a staff member, fighting with another inmate, assaulting an inmate without serious injury, and letting another inmate use his phone account. Ex. A, ECF No. 188-1 at 1-3. On a more positive note, Jimenez has taken many academic and vocational classes over the years, and participated in the Threshold Program, a faith-based program focused on exploring beliefs and improving relationships with others. He has independently studied business and law and has worked as an electrician for seven years. Mot., ECF No. 182 at 9. Jimenez also has a strong support system, including his wife, children, and stepfather who can help transition Jimenez back to society, including providing Jimenez employment opportunities in air conditioning repair and electrical work. Id. at 10.

The court finds that taken as a whole, Jimenez's history and characteristics are neutral with regard to a sentence reduction. The strongest factor weighing in Jimenez's favor is that he has maintained employment as an electrician for 7 years. The court also is impressed by the fact that he has taken many classes and has a strong family support system. However, he has shown a disregard and lack of respect for prison rules, including fighting with an inmate in 2018 and assaulting an inmate in 2019, raising questions about his commitment to following the law. ECF No. 188-1 at 1.

The court next looks at the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the

defendant. The court finds that a sentence of less than 20 years is sufficient to satisfy these goals of punishment.

Regarding the kinds of sentences available and the applicable guidelines range, if sentenced today, Jimenez would face a statutory mandatory minimum sentence of 10 years on Count 1 and a guidelines sentencing range of 151 to 188 months. Jimenez's 20-year sentence was the result of a Rule 11(c)(1)(C) agreement and he faced a sentence as long as life on Count 1. However, the plea agreement occurred within the framework provided by the statute and sentencing guidelines in effect at the time he was sentenced. If Jimenez were sentenced today, plea negotiations would occur in a greatly modified framework, namely, the statutory minimum sentence of 10 years and the guidelines range of 151 to 188 months. The decrease in the sentencing and guidelines ranges weighs in favor of a sentence reduction.

Finally, considering the need to avoid unwarranted sentencing disparities, the court notes that Jimenez's co-defendant, Moises Morejon, originally was sentenced to a term of 240 months on the same Count 1 of the indictment and a consecutive 60-month term for possession of a firearm in furtherance of a drug-trafficking crime on another count, for a total of 300 months. J., ECF No. 62. Morejon filed a motion for compassionate release, arguing that the § 851 enhancement in his case should not have applied. Mot., ECF No. 196. The court granted the motion, finding that without the § 851 enhancement, Morejon faced a minimum sentence of 120 months, followed by the 60-month sentence on the firearm conviction. Mem. Op., ECF No. 196. The court found Morejon presented an extraordinary and compelling reason for a sentence reduction but declined to reduce Morejon's sentence to the statutory mandatory minimum, which would have been 180 months. Instead, after

assessing the § 3553(a) factors, the court reduced his sentence to 240 months, to account for the fact that when Morejon was arrested, he had a cache of weapons at his house, along with drugs and money. Id. The court also noted the Jimenez was serving a sentence of 240 months and reducing Morejon's sentence would not create a sentencing disparity. Id. The court similarly finds today that reducing Jimenez's sentence would not create a sentencing disparity with co-defendant Morejon because Jimenez originally received a sentence that was 5 years shorter than Morejon's original sentence. The remainder of the § 3553(a) factors weigh neither in favor nor against a reduction in Jimenez's sentence.

On balance, the court finds that reducing Jimenez's sentence would be appropriate given the § 3553(a) factors. However, rather than reducing his sentence by 60 months as the court did in Morejon's case, the court finds that a more modest reduction is appropriate. This is because Jimenez's criminal history contains convictions for violent offenses where Morejon's does not, and because Jimenez has been found guilty of assaultive behavior while incarcerated, while Morejon has not. See High, 997 F.3d at 186 (noting that even if a court finds that a defendant has demonstrated extraordinary and compelling reasons for a sentence reduction, it is not required to grant the motion for a sentence reduction if the § 3553(a) factors weigh against it).

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Jimenez's case. Given the circumstances of this case, including Jimenez's history and characteristics, and the changes in 18 U.S.C. § 841(b)(1)(A) brought about by the First Step Act, the court concludes that a sentence of 210 months on Count 1 is appropriate, to be followed by a 5-year term of supervised release. The

court recognizes that such a sentence is higher than both the statutory mandatory minimum sentence that would be applicable today and higher than the guidelines sentence that would be applicable today. Nevertheless, the court remains concerned about Jimenez's violent activities, both in and out of prison, and finds that such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Jimenez's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public.

## IV.

For the above-stated reasons, the court will **GRANT in part** Jimenez's motion for compassionate release, ECF No. 182, and reduce his sentence on Count 1 to 210 months. His term of supervised release will be reduced from 10 years to 5 years. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: May 8, 2023

Michael F. Urbanski
Chief United States District Judge